IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANTWON WHITE,<br><br>                    Petitioner,<br><br>vs.<br><br>WILLIAM LEE, Superintendent, Green Haven Correctional Facility,[1]<br><br>                    Respondent. | No. 9:12-cv-01323-JKS<br><br>MEMORANDUM DECISION |

Antwon White, a New York state prisoner proceeding *pro se*, filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. White is currently in the custody of the New York State Department of Corrections and Community Supervision and is incarcerated at Green Haven Correctional Facility. Respondent has answered, and White has not replied.

## I. BACKGROUND/PRIOR PROCEEDINGS

On October 16, 2006, a grand jury charged White with attempted murder in the second degree, two counts of assault in the first degree (one alleging intentional conduct and the other alleging indifference to human life), assault in the second degree, criminal possession of a weapon in the second and third degrees, and reckless endangerment in the first degree. On direct appeal, the Appellate Division of the New York Supreme Court recounted the following facts underlying White's indictment:

---

      [1]      William Lee, Superintendent, Green Haven Correctional Facility, is substituted for Superintendent, Clinton Correctional Facility. FED. R. CIV. P. 25(c).

In the early morning hours of May 26, 2006, [White] and Jamil Jordan were driving in the City of Schenectady, Schenectady County, when they stopped to talk to a female acquaintance of Jordan. A male exiting a nearby party stopped to ask where [White] and Jordan were from and, upon being informed that they were from the City of Albany, the man shouted that information to the crowd also leaving the party in an apparent attempt to cause a confrontation. Jordan, the passenger, exited the car and started to fight with the man who had called out to the crowd. At some point thereafter, [White] exited the car and brandished an unlicensed handgun. [White] fired the handgun,[FN1] allegedly striking the victim—a bystander—in the head, causing permanent brain damage and leaving the victim in an apparently irreversible persistent vegetative state.

> FN1. [White] testified at trial that he fired a warning shot into the air and did not believe he shot the victim. [White] also asserted a justification defense claiming that he reasonably believed deadly force was necessary to defend himself or another from the imminent use of such force by persons in the crowd near the vehicle.

The trial court conducted a *Wade*[2] hearing on March 8, 2007, and April 17, 2007. Police Detective John Madden testified that he met with an eyewitness in a police station to conduct an identification procedure. The witness viewed a photo array and pointed to photograph number 2 within five to ten seconds. Detective Madden testified that he did not make any facial expressions, gestures, statements or threats to induce the witness to select a particular photograph. Detective Madden also testified that he had generated the six-photo array himself and had shown it to a number of other witnesses, none of whom had selected White's photo.

On cross-examination, Detective Madden testified that, each time the photo array was shown to the witnesses, the photos were in the exact same position. When asked why he did not vary the positions of the photos, he answered, "[j]ust procedurally that's something that we don't normally do, and in the instructions that you read to these people, it's pretty clear you tell them

---

[2] *United States v. Wade*, 388 U.S. 218 (1967). The term "*Wade* hearing" is a shorthand reference to a pretrial proceeding to determine the admissibility of identification evidence. *Id.* at 242.

do not tell other witnesses that you have or have not identified anyone." Detective Madden did not ask any of the witnesses whether they had spoken to any of the other witnesses regarding the identification procedure although he believed that the witness who identified White was acquainted with at least one of the other witnesses.

Defense counsel moved to suppress the photo identification as unduly suggestive because Detective Madden did not vary the position of the photos. In the alternative, counsel asked to call as witnesses in the *Wade* hearing the identifying witness as well as the other witnesses to determine whether they talked to each other about the identification process. By written decision dated May 23, 2007, the court declined to suppress the identification testimony or to compel the production of the witnesses. The court ultimately concluded:

> Testimony revealed that Det. Madden did utilize the same photo array, which he showed to multiple witnesses, who may be acquaintances. Only [the identifying witness] identified [White] as the alleged shooter. Det. Madden further testified that he did not ask [the identifying witness] whether he had spoken with the other witnesses when he made the identification. [The identifying witness] was the *only* witness at the police station when he identified [White] in the photo array. It is found that these findings of fact do not rise to the level of suggestiveness warranting production of an eyewitness to establish the propriety of the pretrial identification. In fact, given the testimony adduced at the hearing, it is determined that [White's] claim that [the identifying witness] might have spoken with the other witnesses, who were unable to identify [White] as the shooter, is purely speculative.
> . . . .
> [T]here is little or no risk that police suggestion led to misidentification. The Detective is trained and experienced and utilized a non-suggestive sampling of photographs of young black males and asked the witness whether he recognized any of the individuals in the photos. This procedure eliminated the possibility of suggestion.

On July 16, 2007, White proceeded to jury trial. At trial, a number of the victim's relatives testified about the victim's current condition, his actions prior to the incident, and events immediately after the shooting. White also testified on his own behalf. On the day White was scheduled to testify, the prosecutor informed the court that the victim's family intended to

3

bring the victim into the courtroom as a spectator. Defense counsel argued that the prosecutor had conspired with the victim's family to prejudice the jury with the victim's appearance. Although he acknowledged that the victim's presence put the defense in a "[t]ough position," the trial judge stated that he was unaware of any law permitting him to bar the victim from the courtroom unless he became disruptive. Defense counsel declined the court's offer to instruct the jury not to consider sympathy for the victim. Prior to White's testimony, the court removed the jury and stated on the record that "the victim made involuntary noises that does draw attention to people." The court then asked the victim's family to remove him from the courtroom.

At the conclusion of trial, the jury found White not guilty of attempted murder and first-degree intentional assault and guilty of the remaining five counts: first-degree depraved indifference assault, second-degree assault, second-degree criminal possession of a weapon, third-degree criminal possession of a weapon, and first-degree reckless endangerment. The court sentenced him to a determinate prison term of 25 years with 5 years' post-release supervision on the first-degree assault conviction. The sentences on the remaining counts ran concurrently.

Through counsel, White appealed his conviction to the Appellate Division, arguing that: 1) the trial court improperly precluded him from calling witnesses at the *Wade* hearing; 2) the trial court improperly submitted counts of both intentional and depraved indifference assault; 3) the trial court erred by allowing the victim to appear in court, admitting prejudicial testimony from the victim's family members, denying a mistrial, and refusing to give a curative instruction; 4) the prosecutor committed misconduct; and 5) the sentence was harsh and excessive. The

4

Appellate Division affirmed White's conviction in a reasoned opinion issued on December 23, 2010.

Again proceeding through counsel, White sought leave to appeal to the New York Court of Appeals, asking the court to address whether: 1) the trial court erred by allowing prejudicial testimony from the victim's family; 2) the trial court improperly allowed the victim to appear in court; and 3) the prosecutor committed misconduct by eliciting prejudicial testimony from the family members, displaying the victim in court, making herself an unsworn witness by stating that she was not responsible for the victim's appearance, and encouraging the jury to disregard the elements of depraved indifference. The Court of Appeals summarily denied the request on June 10, 2011.

White timely filed a Petition for a Writ of Habeas Corpus to this Court on August 21, 2012.

## II. GROUNDS RAISED

In his *pro se* Petition before this Court, White raises four grounds for relief. First, he claims that the trial court erred in precluding him from calling witnesses at the *Wade* hearing. He next argues that the trial court erred in submitting to the jury "a 'dual theory' or 'twin counts indictments' charging both intentional and depraved indifference crimes." White additionally contends that the trial court erred in allowing the victim to appear in court and allowing prejudicial testimony from his family members. Finally, White asserts that the prosecutor committed misconduct by eliciting prejudicial testimony and by becoming an unsworn witness when she informed the jury that she had nothing to do with the victim's appearance in court.

5

## III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

To the extent that the petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Jones v. Stinson*, 229 F.3d 112, 118 (2d Cir. 2000). Under the AEDPA, the state court's findings of fact are

presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

White has not replied to Respondent's answer. The relevant statute provides that "[t]he allegations of a return to the writ of habeas corpus or of an answer to an order to show cause in a habeas corpus proceeding, if not traversed, shall be accepted as true except to the extent that the judge finds from the evidence that they are not true." 28 U.S.C. § 2248; *see also Carlson v. Landon*, 342 U.S. 524, 530 (1952). Where, as here, there is no traverse filed and no evidence offered to contradict the allegations of the return, the court must accept those allegations as true. *United States ex rel. Catalano v. Shaughnessy*, 197 F.2d 65, 66-67 (2d Cir. 1952) (per curiam).

## IV. DISCUSSION

A. Exhaustion

Respondent contends that White has failed to exhaust his *Wade* hearing claim. Although Wade raised this claim on direct appeal to the Appellate Division, he did not address this claim in his application to the Court of Appeals for leave to appeal. This Court may not consider claims that have not been fairly presented to the state courts. 28 U.S.C. § 2254(b)(1); *see Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing cases). To be deemed exhausted, a claim must have been presented to the highest state court that may consider the issue presented. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). In New York, to invoke one complete round of the State's established appellate process, a criminal defendant must first appeal his or her conviction to the Appellate Division and then seek further review by applying to the Court of Appeals for leave to appeal. *Galdamez v. Keane*, 394 F.3d 68, 74 (2d Cir. 2005).

Respondent also contends that White only partially exhausted his prosecutorial misconduct claim because his contention on direct appeal that the prosecutor elicited prejudicial testimony only raised questions of state law. Exhaustion of state remedies requires the petition to fairly present federal claims to the state courts in order to give the state the opportunity to pass upon and correct alleged violations of its prisoners' federal rights. A petitioner must alert the state courts to the fact that he is asserting a federal claim in order to fairly present the legal basis of the claim. An issue is exhausted when the substance of the federal claim is clearly raised and decided in the state court proceedings, irrespective of the label used. *Jackson v. Edwards*, 404 F.3d 612, 619 (2d Cir. 2005).

"[W]hen a 'petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred,' the federal habeas court should consider the claim to be procedurally defaulted." *Clark v. Perez*, 510 F.3d 382, 390 (2d Cir. 2008) (citation omitted); *see also Grey*, 933 F.2d at 121. Because White may not now return to state court to exhaust these claims, the claims may be deemed exhausted but procedurally defaulted from habeas review. *See Ramirez v. Att'y Gen.*, 280 F.3d 87, 94 (2d Cir. 2001).

This Court nonetheless may deny his claim on the merits and with prejudice. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."). This is particularly true where the grounds raised are meritless. *See Rhines v. Weber*, 544 U.S. 269, 277 (2005). Accordingly, this Court declines to dismiss the claim solely on exhaustion grounds and will instead reach the merits of the claims as discussed below.

B. Merits

Claim 1. Denied Witnesses at *Wade* Hearing

White first argues that the trial court erred when it "refused to permit [White] to call the identifying witness . . . to determine whether the identification was influenced by contact with other witnesses." The appellate court rejected this claim on direct appeal, concluding:

> [W]e are unpersuaded by [White's] contention that [the trial court] erred in precluding him from calling at the *Wade* hearing the sole witness who identified him from a photo array, as well as certain other witnesses who failed to identify him after reviewing that same array. According to [White], those witnesses should have been called so that he could explore whether the non-identifying witnesses somehow influenced the identifying witness because of a prior acquaintanceship. Notable, [White] does not assert herein that the photo array was unduly suggestive. Thus, the court's determination was a discretionary one. Given that [White's] stated reasons for calling the witnesses were premised on speculation, we find no abuse of discretion in the denial of his request. Further, we conclude that [the trial court] did not err in declining [White's] later request to reopen the hearing for that purpose.

"A defendant challenging a pretrial identification procedure bears the ultimate burden of proving the procedure was unconstitutional." *Rivalta v. Artuz*, No. 96 CIV. 8043, 1997 WL 401819, at *3 (S.D.N.Y. July 16, 1997) (citing *People v. Berrios*, 270 N.E.2d 709, 712 (N.Y. 1971)). "The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense." *Taylor v. Illinois*, 484 U.S. 400, 409 (1988) (quoting *Washington v. Texas*, 388 U.S. 14, 19 (1967)). However, "under New York law, a defendant does not have an absolute right to call a complainant to testify at a *Wade* hearing." *Rivalta*, 1997 WL 401819, at *3; *accord, e.g.*, *Heron v. People of New York*, No. 98 Civ. 7941, 1999 WL 1125059, at *10 (S.D.N.Y. Dec. 8, 1999) (stating that, "under New York law, it is well-settled that there is no absolute rule which requires the identifying witness to appear at a *Wade* hearing when the suggestiveness of the identification procedure is called into question").

9

"Therefore, 'absent some indication that the pre-trial identification procedure employed was suggestive, a hearing judge may properly preclude a defendant from demanding the appearance and testimony of a witness at the *Wade* hearing.'" *Duran v. Miller*, 322 F. Supp. 2d 251, 257 (E.D.N.Y. 2004) (quoting *Rivalta*, 1997 WL 401819, at *3).

In this case, the trial court did not err in finding that the photo array was not unduly suggestive. *See, e.g.*, *United States v. Bennett*, 409 F.2d 888, 898-99 (2d Cir. 1969) (finding that an array of "only" six photos was not impermissibly suggestive); *United States v. Eldridge*, No. 09-CR-329, 2013 WL 6096520, at *3 (W.D.N.Y. Nov. 20, 2013) (affirming magistrate judge finding that "the fact that defendant was placed in the same position in [two] photo arrays was not unduly suggestive"). Accordingly, although the trial court had the discretion to call the witnesses to testify at the *Wade* hearing, it was not obligated under New York state law or federal constitutional law to produce the witnesses for the defense. As such, the state court's denial of White's request did not deprive him of a federal constitutional right. *See Sorenson v. Superintendent, Fishkill Corr. Facility*, No. 97 CV 3498, 1998 WL 474149, at *4 (E.D.N.Y. Aug. 7, 1998) ("[T]he discretionary exclusion of an identifying witness by a trial judge at a pre-trial identification hearing does not rise to the level of constitutional error."). Moreover, even if the trial court did err in precluding White from calling the witnesses at the *Wade* hearing, White cannot demonstrate that he was prejudiced by the error because it does not appear from the record that the prosecution introduced the photo array during trial. *See Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (petitioner seeking habeas relief must demonstrate than any constitutional error "had substantial and injurious effect or influence in determining the jury's

verdict" and that the error resulted in "actual prejudice"). This claim therefore does not provide White a basis for habeas relief.

        <u>Claim 2. Improper Submission of both Intentional and Depraved Indifference Assault</u>

White next argues that the "[t]rial court erred in submitting 'dual-theory' counts to the jury . . . charging both intentional and depraved indifference crimes to the jury." On direct appeal, White argued that the submission of offenses on both intentional and depraved indifference theories "often resulted in unwarranted convictions under the depraved indifference theory, in part, because juries, reluctant to convict on what they mistakenly believed was the 'most serious' charge—intent—opted instead for a conv[i]ction under what they erroneously believed was a less serious charge—the depraved indifference crime." He contended that it was error to submit both depraved indifference and intentional offenses to the jury because "[t]here was completely insufficient evidence that [White] acted with intent toward anyone."

The appellate court found the issue moot because he was acquitted of the intentional counts by the jury. The court further concluded, "[a]s for [White's] argument that, regardless of the acquittal, he was nevertheless prejudiced as a result of trial evidence submitted in support of those counts that negatively impacted the jury, we note that this claim 'rests on unsupported speculation as to the jury's thought processes.'"

White's claim does not present a federal constitutional claim cognizable on habeas review because he has not established that any error of state law in the submission of the twin-count indictment was so severe as to deprive him of due process. Although, as White argued on direct appeal, twin-count indictments are disfavored by New York state courts, they are not prohibited entirely. *See People v. Suarez*, 844 N.E.2d 721, 731-32 (N.Y. 2005). In

*Suarez*, the Court of Appeals stated that "where twin-count indictments are lodged, trial courts should presume that the defendant's conduct falls within only one category of murder and, unless compelling evidence is presented to the contrary, dismiss the count that is least appropriate to the facts." *Id*. at 731 (internal quotation and citation omitted). In this case, White argues that there was no evidence that he acted with intent. However, even if the trial court erred under state law in submitting the intentional charges to the jury, as White was not convicted of any of the intentional offenses, any such error would not rise to the level of a due process violation. Consequently, White is not entitled to relief on this claim.

<u>Claim 3. Prejudice from Victim's Appearance in Court and Family Member Testimony</u>

White additionally argues that the trial court erred in allowing "prejudicial conduct" before the jury. He complains that "[t]he victim was displayed before the jury while in a vegetative state to show the jury that the gunshots caused him to be placed in a wheelchair." He also contends that "[i]nflammatory and emotional testimony from three members of the victim's family about his vegetative state turn[ed] the entire trial into a plea of emotions from the jury."

With regards to White's claim that the trial court erred in allowing the victim to appear in court, New York Judiciary Law § 4 provides that "[t]he sittings of every court within this state shall be public, and every citizen may freely attend the same." "The requirement of a public trial is for the benefit of the accused; that the public may see he is fairly dealt with and not unjustly condemned, and that the presence of interested spectators may keep his triers keenly alive to a sense of their responsibility and to the importance of their functions." *Waller v. Georgia*, 467 U.S. 39, 46 (1984) (quoting *Gannett Co. v. DePasquale*, 443 U.S. 368, 380 (1979)). The right, however, "is not absolute." *United States v. Gupta*, 699 F.3d 682, 687 (2d Cir. 2012). It "may

give way in certain cases to other rights or interest, such as the defendant's right to a fair trial . . . . Such circumstances will be rare, however, and the balance of interests must be struck with special care." *Id.* (quoting *Waller*, 467 U.S. at 45).

In this case, the record shows that the victim was in the courtroom for a portion of a day and that, after the court found that he was making "involuntary noises that . . . dr[ew] attention," the court asked his family to remove him from the courtroom. Given the judiciary's interests in promoting open trials, the trial court's decision to allow the victim to attend the trial does not contravene or unreasonably apply federal law. Moreover, the Court cannot find that the trial court's refusal to bar the victim from the courtroom rendered White's trial fundamentally unfair, given that the court offered to instruct the jury not to consider sympathy for the victim and had the victim removed from the courtroom once he became disruptive. White is therefore not entitled to relief based on the victim's presence in the courtroom.

White's claims that the trial court admitted prejudicial testimony from the victim's family members similarly must fail. Habeas corpus relief is not available for ordinary errors in evidentiary rulings. *Lisenba v. California*, 314 U.S. 219, 228 (1941). The writ will issue "*only* where petitioner can show that the error deprived [him] of a *fundamentally fair* trial." *Taylor v. Curry*, 708 F.2d 886, 891 (2d Cir. 1983) (citations omitted); *Rosario v. Kuhlman*, 839 F.2d 918, 925 (2d Cir. 1988). The fact that admitted evidence may be "shocking to the sensibilities of those in the courtroom cannot for that reason alone, render its reception a violation of due process." *Lisenba*, 314 U.S. at 228-29.

In this case, the victim's mother testified that her son was hospitalized—paralyzed and in a coma—for 2½ months after which he was sent to a rehabilitation center for 90 days before he

returned home. When the prosecutor asked the mother about the victim's room at home, defense counsel objected and, at sidebar, the court admonished the prosecutor to avoid arousing the jury's sympathy and alluding to civil damages. The court sustained a later objection from defense counsel and instructed the jury that "this is not a civil case" or "about the injuries after the fact." The court stated, "I cautioned you before that sympathy should play no role in your decision. . . . What I want to advise you, caution you, is that the element the D.A. has to prove is serious physical injury at a point in time." He further informed the jury that the parties had stipulated that serious physical injury had occurred to the victim on the date of the incident. Later, however, the court stated that the prosecutor did not agree to "stipulate away her right to present evidence and to prove her case." The victim's cousin later testified that she had driven the victim to Schenectady on the day of the shooting and that he was unarmed and in good spirits. His uncle also testified that, immediately after the shooting, he tended to the victim, who said "Uncle Karl" and tried to grab his own head just before losing consciousness.

Whether to exclude all or part of this testimony is a matter committed to the sound discretion of the trial judge. The trial court properly allowed the prosecution to present evidence of the victim's injuries despite the parties' stipulation that the victim suffered a serious physical injury because the stipulation did not eliminate the need for evidence of the injury. *United States v. Velazquez*, 246 F.3d 204, 211 (2d Cir. 2001) (district court did not err in admitting photos of injuries where defendant stipulated that assault occurred because "details of [the victim's] injuries were legally and morally relevant to the conduct constituting the offenses"); *Rodriguez v. O'Keefe*, No. 96 Civ. 2094, 1996 WL 428164, at *3 (S.D.N.Y. July 31, 1996) ("[Petitioner's] willingness to stipulate to [the victim's] serious physical injury did not obviate the need for

14

evidence on the issue."); *cf. Old Chief v. United States*, 519 U.S. 172, 187-88 (1997) (noting that Government generally has a right to present evidence of a fact that a defendant would prefer to admit, so as to establish the "human significance" of the fact and "to implicate the law's moral underpinnings"). To the extent that White argues that the trial court abused its discretion under New York rules of evidence in allowing irrelevant testimony, such claim is not cognizable on habeas review. *See Estelle*, 502 U.S. at 67-68.

In any event, White has not shown that the admission of the challenged testimony rendered his trial fundamentally unfair. *Lisenba*, 314 U.S. at 228. Admission of inflammatory testimony deprives a defendant of a fair trial only if it "fatally infect[s]" the trial. *Id.* at 236. The testimony must "so infuse[ ] the trial with inflammatory prejudice as to render a fair trial impossible." *Salemme v. Ristaino*, 587 F.2d 81, 86 (1st Cir. 1978). The challenged testimony was not so inflammatory that it was likely to have affected the verdict of the jury, particularly given the curative instructions offered by the trial court. In the context of a trial in which White discharged a firearm and the victim suffered permanent brain damage leaving him in an irreversible persistent vegetative state, the family members' repetition of the details surrounding the victim's injuries did not unfairly tip the scales against White. Thus, White has not shown that the receipt of the challenged testimony deprived him of fundamental fairness, and he is not entitled to relief on this argument either.

Claim 4. Prosecutorial Misconduct

Finally, White contends that the prosecutor committed misconduct in a number of ways. First, he argues that she elicited prejudicial testimony "to portray and bolster the fact that the victim was in a [vegetative] state and uttered his last words to 'Uncle Karl' and never has uttered

a word since." He additionally argues that the prosecutor became an "unsworn witness" by twice informing the jury that she had nothing to do with the victim's appearance in court. He also states that the prosecutor "mocked" White's trial testimony.

"The appropriate standard of review for a claim of prosecutorial misconduct on a writ of habeas corpus is the narrow one of due process, and not the broad exercise of supervisory power." *Floyd v. Meachum*, 907 F.2d 347, 353 (2d Cir. 1998) (quoting *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (internal quotation marks omitted)). The petitioner must demonstrate that the alleged misconduct "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Parker v. Matthews*, 132 S. Ct. 2148, 2153 (2012) (quoting *Darden*, 477 U.S. at 181). The court must look at the totality of the circumstances in deciding whether the egregiousness of the prosecutor's alleged misconduct justifies relief. *United States v. Young*, 470 U.S. 1, 11-12 (1985). In the Second Circuit, this inquiry includes three factors: (1) the severity of the prosecutor's misconduct, (2) any curative measures taken by the court; and (3) the certainty of the conviction without the prosecutor's comments. *See, e.g., United States v. Melendez*, 57 F.3d 238, 241 (2d Cir. 1995); *Bentley v. Scully*, 41 F.3d 818, 824 (2d Cir. 1994); *Floyd*, 907 F.2d at 355. Standing alone, prosecutorial misconduct is insufficient to overturn a conviction. *Duran v. Miller*, 322 F. Supp. 2d 251, 259 (E.D.N.Y. 2004).

With respect to White's claim that the prosecutor impermissibly elicited prejudicial testimony, as discussed *supra*, the challenged testimony was not so inflammatory that it was likely to have affected the verdict of the jury, particularly given the curative instructions offered by the trial court, and the family members' repetition of the details surrounding the victim's

16

injuries did not unduly prejudice White. White therefore cannot show that the prosecutor committed misconduct in eliciting the challenged testimony.

His claim that the prosecutor became an unsworn witness during summation also must fail. The record shows that defense counsel stated in summation, "There's been repeated attempts to direct your attention at emotion and at sympathy, culminating in an attempt yesterday." In her closing argument, the prosecutor stated, "The Defense Attorney asked you to infer that I participated in a decision about who was present in this courtroom, and I am telling you that I didn't." It appears that the prosecutor's comment responded to defense counsel's summation which is proper under New York law. *See People v. Halm*, 611 N.E.2d 281, 282 (N.Y. 1993) ("[T]he prosecutor's closing statement must be evaluated in light of the defense summation, which put into issue the complainants' character and credibility and justified the People's response."); *People v. Perez*, 794 N.Y.S.2d 439, 440 (N.Y. App. Div. 2005) (statements during summation are permissible if they constitute a "fair comment on the evidence" at trial and reasonable inference therefrom, or a "fair response to remarks made by the defense counsel during summation"). In any event, White cannot show that the comment "so infected the trial with unfairness as to make the resulting conviction a denial of due process" as to be cognizable on federal habeas review. *Parker*, 132 S. Ct. at 2143 (citation omitted).

Finally, White contends that the prosecutor "mocked" his trial testimony. He provides no support for his assertion and thus his bare contention also must fail. *See In re Vey*, 520 U.S. 303, 303-04 (1997) (per curiam) (conclusory statements insufficient to support allegations on habeas corpus review). Moreover, the Court's review of the record finds no conduct on the part of the prosecutor that comes even close to the egregious conduct required for habeas relief. *Cf. Pinero*

*v. Conway*, No. 05 Civ. 2559, 2010 WL 6397588, at *13 (S.D.N.Y. Dec. 13, 2010) (prosecutor's mocking of defense counsel's speech patterns during summation "d[id] not constitute egregious misconduct sufficient to deprive [a petitioner] of a fair trial"). White therefore is not entitled to relief on this argument either.

## V. CONCLUSION

White is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. 28 U.S.C. § 2253(c); *Banks v. Dretke,* 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)). Any further request for a Certificate of Appealability must be addressed to the Court of Appeals. *See* FED. R. APP. P. 22(b); 2D CIR. R. 22.1.

The Clerk of the Court is to enter judgment accordingly.

Dated: April 21, 2014.

                                          /s/ James K. Singleton, Jr.
                                          JAMES K. SINGLETON, JR.
                                          Senior United States District Judge